## WALKER HOSPITAL v. PULLEY.

[No. 10,303.    Filed May 26, 1920.    Rehearing denied December 7, 1920.    Transfer denied January 26, 1921.]

1. APPEAL.— *Questions Presented.*— *Sufficiency of Evidence.*— Appellant's contentions that the verdict is not sustained by sufficient evidence, and that the verdict is contrary to law because there is not evidence tending to prove certain ultimate facts which are essential to a recovery, present but one question on appeal.    p. 661.

2. PHYSICIANS AND SURGEONS.—*Malpractice.*—*Negligence.*—*Expert Testimony.*—Generally, where negligence is predicated on a physician's lack of skill or attention, the court and jury must depend on expert evidence, but jurors of ordinary intelligence, sense and judgment, although not skilled in medical science, are capable of reaching a conclusion without the aid of expert testimony as to whether it is good surgery to permit a wound to heal superficially, with nearly a half yard of gauze deeply imbedded in the flesh, and likewise are capable of determining whether or not injurious consequences of some character would probably result, although the exact nature and extent of such resulting injuries could not be determined by laymen without the aid of medical science.    p. 663.

3. PHYSICIANS AND SURGEONS.—*Malpractice.*—*Evidence.*—*Sufficiency.*—In an action for malpractice in leaving a piece of gauze in an incision made during the course of a surgical operation, evidence *held* sufficient to sustain a finding of negligence.    p. 665.

4. APPEAL.— *Review.*— *Harmless Error.*— *Admission of Evidence.*—In an action against a hospital corporation for malpractice, admission in evidence of statements made by one of the surgeons to plaintiff when she was a patient in the hospital, relating to her physical condition, could not have harmed defendant, in that there was not proof that the surgeon was an employe or agent of the corporation, since, if there was not proof of that fact, there would be an utter failure of proof as to an element essential to recovery which would require a reversal, the complaint being drawn upon the theory that the attending surgeons were employes or agents of the corporation.    p. 666.

5. TRIAL.—*Admission of Evidence.*—In an action against a hospital corporation for malpractice by surgeons alleged to have been furnished by it, it was not improper to admit in evidence certain statements of one of the surgeons to plaintiff, as against the objection that there was no proof that such surgeon

was an agent or employe of defendant corporation, where there was sufficient evidence on that question adduced to warrant the jury in deciding that the surgeon was an employe or agent of defendant. p. 667.

6. PHYSICIANS AND SURGEONS.—*Malpractice.*—*Measure of Damages.*—In actions for malpractice there is no fixed measure of damages, the amount to be awarded in such cases depending on the sensibilities and the judgment of the jurors. p. 668.

7. PHYSICIANS AND SURGEONS.—*Malpractice.*—*Excessive Damages.*—An award of $2,100 to a woman who suffered great physical pain and mental anguish, became permanently injured, etc., as a result of a surgeon negligently leaving a piece of gauze in an incision made during the course of a surgical operation, was not excessive, the amount not being so large as to indicate that the jurors were actuated by passion, prejudice or any improper influence or motive. p. 668.

8. APPEAL.—*Rehearing.*—*Scope of Review.*—An appellant cannot base a petition for rehearing on a question which was not presented to the trial court, nor to the appellate tribunal at the original hearing. p. 668.

From Gibson Circuit Court; *Simon L. Vandeveer,* Judge.

Action by Francis E. Pulley against the Walker Hospital. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*Albert J. Veneman, William C. Welborn, Louis R. Roberts, James T. Walker* and *Henry B. Walker,* for appellant.

*Elmer O. Lockyear* and *Phil W. Frey,* for appellee.

DAUSMAN, J.—Appellee instituted this action to recover damages for malpractice. It is averred in the complaint that appellant is a corporation, maintaining its place of business at the city of Evansville; that its business is to furnish for hire medical and surgical aid to the afflicted, and for that purpose has in its employ a number of physicians, surgeons, and nurses; that by its agents and servants it performed a surgical operation on the person of appellee; that in the course of the operation a deep incision was made in her left leg; that

in the subsequent treatment and care of the wound caused by the incision gauze was placed therein; that the gauze should have been removed before the wound was allowed to heal superficially; that appellant negligently permitted the gauze to remain in the wound, and allowed the wound to heal over and inclose the gauze in the flesh and around the bone; that the gauze was negligently permitted to rot and decay in the flesh at the bone; that the negligent failure to remove the gauze from the wound resulted in blood poisoning and fever, thereby causing appellee to become sick and sore, to suffer physical pain and mental anguish, and to become permanently injured and crippled.

Answer in denial. Verdict and judgment for $2,100. The only error assigned is the action of the court in overruling the motion for a new trial.

(1) Under separate headings counsel for appellant urge two propositions: (1) That the verdict is not sustained by sufficient evidence; and (2) that the verdict is contrary to law, because there is no evidence whatever tending to prove certain ultimate facts which are essential to a recovery. These two propositions will be considered together, since on appeal they present but one question. *Cincinnati, etc., R. Co.* v. *Madden* (1893), 134 Ind. 462, 34 N. E. 227; *Deal* v. *State* (1895), 140 Ind. 354, 39 N. E. 930; *Elkhart Paper Co.* v. *Fulkerson* (1905), 36 Ind. App. 219, 75 N. E. 283.

The following facts are not disputed: Mrs. Pulley is a resident of Harrisburg, Illinois. On July 12, 1915, in the Walker Hospital at Evansville, Indiana, she submitted to an operation for necrosis of the femur. The operation was performed by Dr. Welborn and his assistants. On August 1, she left the hospital and returned to her home. When she left the hospital Dr. Welborn transmitted a letter to Dr. Parish, her local physician at Harrisburg, in which he stated:

"Your patient, Mrs. Pulley, has done exceedingly well. She walks around on crutches, and the wound is about closed. She never has the severe pain and is getting less nervous and seems to be stronger in every respect. I think though, she ought to have a building-up tonic for sometime.

"You might have to redress the wound a few times; it is just merely a sinus and ought to be closed within the week. I hope she will soon be completely recovered."

When she arrived home Dr. Parish dressed the wound. The first time he dressed it there was a slight discharge; but the second time the wound had entirely closed. Then trouble developed. Her limb became greatly swollen from hip to ankle, inclusive. She had some fever and suffered much pain. In the night of August 8, Dr. Blackard was called in consultation with Dr. Parish. She then complained of pain in the thigh, ankle and pelvis. The wound was closed, but was tender. In about a week thereafter the wound reopened of its own accord. The wound discharged pus for a time, and later a yellow serum. It was a serious discharge. She suffered pain continuously, and was very nervous. She insisted that the doctors at the hospital had left a piece of gauze in the sinus; and, on August 24, because of her insistence, Drs. Blackard and Parish probed for gauze. At that time a dressing forceps was used, which proved to be too large for the opening of the wound and could not be inserted far enough to make a satisfactory test. Dr. Blackard promised her that the next time he came he would bring a more suitable instrument and would try again. On the next day he used a smaller instrument and succeeded in drawing out of the sinus a piece of gauze one-half inch in width and about fifteen inches in length. From that time the patient improved; but she continued to complain of pain in the ankle and pelvis. Dr. Blackard saw her every day from August

15 to September 9, but not so frequently thereafter. Later she went to Lake View Hospital, Chicago.

After a careful consideration of its brief, we are unable to determine with certainty whether or not appellant is contending that there is no evidence tending to prove that the failure to remove the gauze from the sinus constitutes negligence. As to that point, therefore, it is sufficient to say that there is an abundance of evidence tending to sustain the conclusion of the jury as expressed by their verdict.

Appellant's first distinct contention is that there is no competent evidence tending to prove that the presence of the gauze in the sinus, for the length of time and under the conditions disclosed by the evidence, resulted in any injury to the patient. In other words, the contention is that the causal relation, if any, between the negligence and the pathological conditions of the patient, which developed after she returned to her home, can be proved only by the testimony of experts; and that there is no expert testimony on that subject. Counsel earnestly insist that whether the presence of the gauze in the sinus, which was permitted to heal superficially and inclose the gauze in the flesh for a period of at least thirty days, was the cause of the unfortunate conditions which followed, and of the suffering endured by the patient, is a question which can be answered only by men skilled in medical science.

The questions ordinarily involved in malpractice cases, such as whether a surgical operation was negligently performed, or whether the care and attention following the operation was negligent, and the like, are questions of science; and necessarily the evidence from which those questions are to be determined must come from physicians and surgeons. The general rule is that, where negligence is predicated on lack of skill or attention, the court and jury must

depend on expert · evidence. *Longfellow* v. *Vernon* (1915), 57 Ind. App. 611, 105 N. E. 178; *Ewing* v. *Goode* (1879), 78 Fed. 442. We cannot concede, however, that the general rule is applicable in all respects to the case at bar. By that statement we mean to say that, in our opinion, jurors of ordinary intelligence, sense, and judgment, although not skilled in medical science, are capable of reaching a conclusion without the aid of expert testimony as to whether · it is good surgery to permit a wound to heal superficially with nearly half a yard of gauze deeply imbedded in the flesh, and likewise are capable of determining whether or not injurious consequences of some character would probably result. The exact nature and extent of the evil consequences resulting therefrom, of course, laymen would not be competent to determine without the aid of medical science. But the jurors were not without expert assistance. We glean the following from the testimony of the men skilled in medical science.

Dr. Welborn: "I performed the operation July 12. The incision was from 6 to 10 inches long. We packed the cavity around the bone with iodoform gauze. We put in 20 to 30 inches of the gauze. It was removed and the sinus was repacked from time to time by Dr. Cleveland. About July 28, I was called in by Dr. Davidson. He said he had removed the drainage (gauze) but that there was a little question as to whether he had it all out. I told him to be sure, and to search for it. He did so but found none. Then I searched for it. It hurt her a good deal and she asked me to stop. I suggested that we give her an anesthetic, and investigate more. She did not care to take it. The gauze should be removed every third or fourth day. It is better to take out the old gauze and put in fresh gauze. The granulations springing up under it will do better if the gauze is changed occasionally. If the gauze were

never taken out, it might be that pus would come out; or it might be the gauze would be pushed out. If the gauze did not come out, pus might form under it. I wrote Dr. Parish on August 1, but did not tell him there was gauze in the leg; because I did not know it was there. If I had known, I would have told him. If the wound should heal with gauze in it, the gauze would work out. I wrote Mrs. Pulley a letter on August 30 in which I stated 'I am glad to know that you have found the drainage and I know it will heal up soon.'"

Dr. Hollingsworth: "The office of the gauze is to drain the wound, and it performs that function as long as it has capillary attraction. If the pus is profuse and the gauze can be easily removed, it should be changed every 24 hours. But no unvarying rule for its removal can be fixed, since it depends on the condition of the patient. If the wound should heal over, there would be no tendency for it to break down again unless there should be some irritating substance inside. It is not good surgery to permit a wound to heal over a piece of gauze. I am always careful to take the gauze out because it should come out. The body is not made up of gauze."

Dr. Maxam: "It was improper to allow the wound to close with the gauze inside, and the pain and suffering resulted therefrom. The gauze would act as a foreign substance. It generally works itself out."

We will not extend this opinion by setting out the testimony of other medical men. It is sufficient to say that there is evidence, competent and substantial, 3. tending fairly to sustain the verdict with respect to this feature of the controversy.

The second contention is that there is no evidence to prove that the surgeons, or any of them, were employes or agents of the corporation. In other words, the contention is that Drs. Walker and Welborn were partners,

conducting their business in the firm name of Walker and Welborn; that the business conducted at the hospital was the business of the firm, and that generally persons who came to the hospital for treatment were the patients of the firm and not of the corporation; that the corporation existed merely for the purpose of owning the real estate and hospital equipment, of employing nurses, and acting as the business manager and agent of the firm; that no contractual relation existed between Mrs. Pulley and the corporation, but that in truth the only contractual relation that existed was between her and the firm; and that she was the patient of the firm and not of the hospital. The evidence bearing upon this phase of the case is equivocal. Under the circumstances, if she had brought her action against the members of the firm, they could have defended on the ground that her only contractual relation was with the corporation. The controversy as to this feature was one of fact. We will not set out the evidence bearing upon this element, but will content ourselves by saying that there is evidence in the record tending fairly to sustain the verdict with respect thereto. A deliberative examination of that evidence and a proper appreciation of the legitimate inferences to be deduced therefrom render it impossible to sustain the contention.

(2) Certain statements made by one of the surgeons to Mrs. Pulley when she was a patient in the hospital, relating to her physical condition, were admitted 4. in evidence over appellant's objections. The objection in each instance was in effect that there is no proof that the surgeons were employes or agents of the corporation. If counsel were correct in this contention, the admission of that evidence would be harmless; for in that event we would reverse the judgment on the ground that the verdict is contrary to law, since then there would be an utter failure of proof as to an

element essential to a recovery. That objection constitutes nothing more than an indirect attempt to present the proposition that the verdict is not sustained by any evidence tending to prove an essential element.

5. That question we have already determined. Of course, the trial court could not know at the time of admitting the testimony how the jury would decide this point; but the testimony was admissible on the theory that on the evidence adduced the jury would be justified in deciding the point in appellee's favor. Our conclusion as to the admissibility of that testimony effectually disposes also of the objection to the admissibility of the letter written by Dr. Welborn to Mrs. Pulley's home physician. The court did not err in admitting any of these items of evidence as against the objections interposed.

It is also contended that the court erred in admitting the following items of evidence: Skiograms of Mrs. Pulley's teeth, which were made at Lake View Hospital for the purpose of determining whether or not she had septicemia; the testimony of Mrs. Duncan as to the physical condition of Mrs. Pulley as evidenced by her ability to work before and after the surgical operation; and the piece of gauze taken from the sinus. When the circumstances leading up to the introduction of these items of evidence, the purpose they were intended to subserve, and the objections thereto, are considered, it becomes apparent that there is no merit in these contentions.

It is contended that the court erred in giving each of twelve instructions and in rejecting each of fourteen requested. It is not probable that any court would commit so many reversible errors in rejecting or giving instructions, unless the nature of the action had been entirely misconceived. It is seldom, therefore, that counsel are justified in urging error in so many instruc-

tions given or refused. In the case at bar it appears that the trial court had a clear and correct conception of the nature of the action and of the law applicable to the various questions involved. We would not be justified, therefore, in embodying or discussing in this opinion the instructions given and refused. We have patiently considered them; and we find that those given are substantially correct; that those rejected which were applicable are covered by those given; and that the instructions as an entirety correctly state the law of the case.

In actions of this kind the law furnishes no fixed "measure of damages" to aid the jury. In such cases the amount to be awarded must depend on the 6-7. sensibilities and the judgment of the jurors. In the case at bar the amount is not so large as to create the impression that the jurors were actuated by passion, prejudice, or any improper influence or motive. The damages are not excessive.

Judgment affirmed.

### ON PETITION FOR REHEARING.

DAUSMAN, P. J.—The appellant has filed a petition for a rehearing and, in addition to the other grounds specified therein, seeks to present a new proposition, 8. viz., that a corporation cannot practice medicine and surgery. That question was not presented to the trial court nor to this court at the original hearing, and appellant will not be permitted to present it now. Ewbank's Manual §244. Furthermore, it is in no manner involved in the case, but is excluded by the theory of the complaint.

The petition for rehearing is denied.